1
2
3
4
5

6          **UNITED STATES DISTRICT COURT
               DISTRICT OF ARIZONA**

7

8     **Arturo Gamez-Villagrana,**              CV-07-1550-PHX-SMM (JRI)
              Petitioner
9            -vs-
         **Katrina Kane,**                      **REPORT & RECOMMENDATION
10           Respondent                         On Petition for Writ of Habeas Corpus
                                                Pursuant to 28 U.S.C. § 2241**

11                    **I. MATTER UNDER CONSIDERATION**

12          Petitioner, presently incarcerated in the federal Detention Center at Eloy, Arizona,

13   filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on August 10, 2007

14   (#1), challenging his continued detention during his immigration proceedings.  On November

15   19, 2007, Respondents filed their Response (#11).   Petitioner filed a Reply on January 18,

16   2008 (#16).

17          The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned

18   makes the following proposed findings of fact, report, and recommendation pursuant to Rule

19   8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28

20   U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

21

22           **II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND**

23   **A. REMOVAL PROCEEDINGS**

24          <u>Allegations of Removability</u> - On June 9, 2004, the Immigration and Naturalization

25   Service ("INS") issued Petitioner a Notice to Appear (Exhibit A), alleging that Petitioner is

26   a native and citizen of Mexico and not the United States, and asserting that he had been

27   ordered removed in 1993 but had re-entered the United States illegally in 1995.  (Exhibits

28
                                      - 1 -

to the Answer, #11, are referenced herein as "Exhibit __.") (*See* also Exhibit B, Order of Deportation, 8/12/93.)  However, the Record of Deportable/Inadmissible Alien prepared by the INS (Exhibit C) reflected that Petitioner's mother was a native and/or citizen of the United States, and that Petitioner was claiming derivative citizenship.  On June 21, 2004, the INS filed Additional Charges of Inadmissibility/Deportability (Exhibit D), alleging that Petitioner was deportable by reason of a conviction on a controlled substance violation.  Supplied records reflected a California state conviction on February 8, 2001 for felony possession of heroin.  (Exhibit E.)

Detention - Petitioner was ordered detained on June 9, 2004 (at the time of the Notice to Appear) pursuant to section 235 of the Immigration and Nationality Act ("INA") and related regulations.  (Exhibit F, Not. Custody Determ.)  Petitioner filed a request for release, which was denied on June 30, 2004.  (Exhibit G, IJ Order dated "6-30-03.")

Removal Hearing - At the removal hearing, Petitioner admitted to being born in Mexico, to re-entry in 1995, and to the 2001 heroin conviction, but denied having been removed and argued his derivative citizenship.  The immigration judge rejected the claim of citizenship, and sustained all three deportability charges: the prior deportation/illegal re-entry, the presence without proper documents, and the controlled substance conviction charges.  The immigration judge found no grounds for relief from removal, and ordered Petitioner removed to Mexico. (Exhibit H, IJ Decision 8/26/04; Exhibit I, IJ Order 8/26/04.)

**B. PROCEEDINGS ON RE-DETERMINATION OF CITIZENSHIP**

Petitioner sought review by the Board of Immigration Appeals ("BIA"), and filed a Motion to Remand (Exhibit J), asserting that he had obtained evidence that his maternal grandmother was a native of the United States, thereby supporting his claim of his mother's citizenship and his own derivative citizenship.  In January, 2005, the BIA sustained the appeal, and remanded the matter to the immigration judge for a re-determination on Petitioner's citizenship claim. (Exhibit K, BIA Order 1/11/05.)

The immigration judge reheard the matter, but again concluded that Petitioner had not

established his claim of citizenship, and again ordered Petitioner removed.  (Exhibit L, IJ Order 3/11/05; Exhibit X, IJ Dec. 3/11/05.)

Petitioner again appealed to the BIA, noting that he continued to be detained. (Exhibit M, Not. Appeal.)  The BIA rejected his appeal, finding that he had failed to show that his mother had spent 10 years in the United States prior to Petitioner's birth in Mexico. (Exhibit N, BIA Order 9/6/05.)

## C.  PROCEEDINGS BEFORE THE NINTH CIRCUIT

On September 20, 2005, Petitioner filed a Petition for Review by the Ninth Circuit Court of Appeals, and sought a stay of removal.  (Exhibit O.)  Counsel was appointed for Petitioner. (Exhibit R, Order 5/1/06.) On August 2, 2007, the Ninth Circuit held the petition in abeyance and  transferred the  matter to the district court for the District of Arizona for a *de novo* determination of Petitioner's citizenship claim.  The court of appeals also expressed concern whether Petitioner's continued detention under INA § 236(c), 8 U.S.C. § 1226(c), continued to be authorized in light of the length of his detention and the foreseeable process, and noted his custody could be reviewed in a separate habeas proceeding.  (Exhibit W, 9th Cir. Order 8/2/07.)

## D.  PROCEEDINGS BEFORE DISTRICT COURT ON CITIZENSHIP

Petitioner's claims of citizenship were transferred to the District of Arizona, in *Gamez-Villagrana v. Gonzales*, CV-07-1519-PHX-FJM. Those claims are set for trial before District Judge Martone on June 10, 2008.  (2:07cv1519, Order 2/7/08, #34.)

## E.  ADMINISTRATIVE REVIEW OF CUSTODY

Petitioner has remained in custody since the 2004 commencement of proceedings.

**2005 Review of Custody** - While the matter was pending before the Ninth Circuit, Petitioner's custody status was reviewed by the Immigration and Customs Enforcement agency on December 7, 2005.  He was ordered to be continued in detention on the basis of

his administratively final order of removal and his criminal history.  (Exhibit P, Custody Review Worksheet; Exhibit Q, Custody Decision 12/7/05.)

**2006 Review of Custody** - Petitioner's custody status was again reviewed on November 30, 2006, and was again continued on the basis of his removal order, criminal history, and failure to offer documentation supporting his release.  (Exhibit T, ICE Order 11/30/06.)

**2007 Review of Custody** - Petitioner's last custody status review was in September 2007, during the pendency of this proceeding.   Petitioner presented documents reflecting a proposed residence with his sister in Los Angeles, a job offer, and completion of ESL and substance abuse classes.  Based upon his threat to public safety  and flight risk,  he was ordered to continue in custody.  (Exhibit U, Custody Review Worksheet; Exhibit V, ICE Order 9/26/07.)

## F.  CURRENT HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the present proceeding on August 10, 2007 by filing his *pro se* Petition under 28 U.S.C. § 2441 For a Writ of Habeas Corpus by a Person in Federal Custody (#1).  Petitioner asserts a single ground for relief,  arguing that his detention in custody since 2004 is not authorized as mandatory detention under 8 U.S.C. § 1226, pursuant to *Kim v. Demore*, 538 U.S. 510 (2003).  Service was ordered on October 12, 2007 (#4).

**Answer** - Respondent filed her Answer (#11) on November 19, 2007.  Respondent argues that Petitioner is not detained pursuant to 28 U.S.C. § 1226, but pursuant to 8 U.S.C. § 1231(a) (INA § 241), on the basis that Petitioner has, by seeking judicial review and stay of removal, acted to prevent his removal.  Respondent further argues that the Government has complied with applicable regulations(28 C.F.R. § 241.4) by conducting periodic reviews of Petitioner's custody, and concluding on the basis of his criminal record and previous immigration violations that he is a flight risk and a danger to the community.  (Answer, #11 at 10-13.)  Respondent argues that because Petitioner's removal is "reasonably foreseeable"

1   (having been hindered only by Petitioner's continued challenges to removal), it is not limited

2   by the Court's decision on indefinite detention in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

3   (Answer, #11 at 13-15.) Alternatively, Respondent argues that Petitioner's continued

4   detention is authorized under § 1226(c) to the extent that his removal period has not yet

5   commenced because of the pendency of his judicial appeal. (Answer, #11 at 15-21.)

6       **<u>Reply</u>** - Petitioner, now represented by counsel, filed his Amended[1] Reply (#17) on

7   January 21, 2008. Petitioner argues that § 1231 will not apply until after the Ninth Circuit

8   lifts its stay of removal and thus his detention must be under § 1226. (Reply, #17 at 2-5.)

9   He argues he has not received the expedited removal process required for detention under §

10   1226, as determined necessary under *Kim v. Demore*, 538 U.S. 510 (2003) and *Tijani v.*

11   *Willis*, 430 F.3d 1241 (9th Cir. 2005), and that the six month standard for § 1231 detention

12   under *Zadvydas* was made applicable to detention under § 1226 in *Nadarajah v. Gonzales*,

13   443 F.3d 1069 (9th Cir. 2006). (Reply, #17 at 5-10.) Petitioner argues that in light of his

14   claims to citizenship, his removal is not reasonably foreseeable (*id.* at 10), and he does not

15   pose a flight risk or risk to the community (*id.* at 10-11). Petitioner argues in the alternative

16   that if his detention is under § 1231, it has been too long under *Zadvydas*, and no flight risk

17   or risk to the community justifies his continued detention. (Reply, #17 at 11-12.)

18

19                     **III. APPLICATION OF LAW TO FACTS**

20   **<u>A.  AUTHORITY FOR PETITIONER'S DETENTION</u>**

21       Petitioner's circumstances reflect a common scenario: he is being detained during a

22   judicial review of his administratively final order of removal, which has been judicially

23   stayed. Respondents argue primarily that this custody is pursuant to 8 U.S.C. § 1231, and

24   Petitioner argues primarily that it is pursuant to 8 U.S.C. § 1226.

25       **<u>Removal Period Detention Under § 1231</u>** - Section 1231 authorizes detention during

26   _____

27       [1]  The original Reply (#16), filed January 18, 2008, was submitted with only the
memorandum. The Amended Reply (#17) was submitted as a "Notice of Errata," and

28   included the entire reply, including the memorandum.

1    the "removal period," and provides:

2           During the removal period, the Attorney General shall detain the alien.
        Under no circumstance during the removal period shall the Attorney
3       General release an alien who has been found inadmissible under section
        1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section
4       1227(a)(2) or 1227(a)(4)(B) of this title.

5    8 U.S.C. § 1231(a)(2).

6           The statute defines the "removal period" as the 90 day period beginning on the latest

7    of: (1)  when the removal order is administratively final; (2) when a final order is entered on

8    a judicial review, if stay of removal has been issued; or (3) upon release from other custody

9    (e.g. a criminal prison term).  8 U.S.C. § 1231(a)(1)(A) and (B).  However, where an alien

10   fails to assist in his removal or "acts to prevent the alien's removal", the running of the 90

11   day limit is suspended.  8 U.S.C. § 1231(a)(1)(C).

12          The statute further provides that after the removal period the alien is to be released on

13   supervision, § 1231(a)(3), unless he is a criminal alien, in which case he may be detained

14   beyond the removal period if he "has been determined by the Attorney General to be a risk

15   to the community or unlikely to comply with the order of removal," § 1231(a)(6).

16          **Detention Pending Removal Decision under § 1226** - Section 1226 authorizes

17   detention of aliens "pending a decision on whether the alien is to be removed from the United

18   States."  8 U.S.C. § 1226(a).  Detention is made mandatory for certain inadmissible or

19   criminal aliens.  8 U.S.C. § 1226(c).  Except for mandatory detention cases, the Attorney

20   General is given authority to release the alien on conditions or bond.  8 U.S.C. § 1226(a)(2).

21          **Detention Not Authorized by § 1231** - In the instant case, Petitioner is subject to a

22   removal order which is administratively final, but which is pending upon judicial review, and

23   subject to a stay of removal.  Accordingly,  Petitioner's removal period will not commence

24   until "the date of the court's final order."  8 U.S.C. § 1231(a)(1)(B).  Because section 1231

25   only authorizes detention "[d]uring the removal period," 8 U.S.C. § 1231(a)(2), or "beyond

26   the removal period," 8 U.S.C. § 1231(a)(6), it cannot authorize Petitioner's pre-removal

27

28

1    period detention.[2]

2         This reading of the plain language of the statute has been followed by a variety of

3    authorities.  *See Bejjani v. I.N.S,* 271 F.3d 670, 689 (6th Cir. 2001), *abrogated on other*

4    *grounds* by *Fernandez Varga v. Gonzales*, 548 U.S. 30 (2006) (holding detention not

5    authorized by § 1231 pre-removal period, *i.e.* during judicial review with stay of removal)*;*

6    *Kothandaraghipathy v. Department of Homeland Sec.,* 396 F.Supp.2d 1104, 1107

7    (D.Ariz.,2005) (Teilborg, D.J.) (§ 1226 rather than § 1231 authorized detention because

8    "[a]lthough Petitioner is subject to an administratively final order of removal, the 'removal

9    period' has not yet begun because his removal order is currently on appeal to the Ninth

10   Circuit and because the Ninth Circuit has granted Petitioner a stay of his removal.")*;*

11   *Quezada-Bucio v. Ridge,* 317 F.Supp.2d 1221, 1224 (W.D.Wash. 2004) (same); *Hang Nam*

12   *Yoon v. Crawford,* 2007 WL 4609573, 3 (D.Ariz. 2007)  *reconsideration granted on other*

13   *other grounds,* 2008 WL 169647 (2008) (McNamee, D.J.) (same).  *See also Tijani v. Willis,*

14   430 F.3d 1241, 1242 (9th Cir. 2005) (evaluating detention during judicial review under §

15   1226).  *Cf. Andrade v. Gonzales,* 459 F.3d 538, 543 (5th Cir. 2006) (§1231 applied despite

16   pending judicial review, because no valid stay was issued).

17        The authorities cited by Respondent (*see* Answer, #11 at 10-11) do not hold to the

18   contrary without a preceding presumption that "removal proceedings" is by definition limited

19   to administrative proceedings, and that "final removal order" necessarily refers only to an

20   administratively final order.  Thus, although the *Zadvydas* court referenced the applicability

21   of § 1226 "[w]hile removal proceedings are in progress," 533 U.S. at 683, they did not limit

22   such removal proceedings to administrative processes.  Indeed, the Court noted that § 1231

23   only applied "[a]fter entry of a final removal order and during the 90-day removal period,"

24   *id.*  By the terms of § 1231 that removal period does not commence until a final judicial

---

26         [2] Respondents argue that Petitioner's judicial appeal "suspended the removal period"
27   because it amounted to an affirmative act preventing his removal.  (Answer, #11 at 11.)  To
     the contrary, because a stay was issued, Petitioner's appeal did not "suspend" the removal
28   period, but delayed it's commencement, as provided by § 1231(a)(2)(ii).

1    order, where there has been an appeal and a stay order.

2         Similarly, when the BIA decision in *In re Joseph,* 22 I.&N. Dec. 660, 668 (1999),

3    referenced the applicability of § 1226 "after an administratively final order," they were not

4    faced with an administrative order under judicial review.   Rather they were determining

5    whether authority for detention shifted from § 1226 to § 1231 in "the interval between when

6    an Immigration Judge issues a decision on the issues of removability and relief and when

7    there is an administratively final decision on removability" as a result of a BIA decision.  22

8    I.&N. Dec. at 668-669.  Thus, the only finality of relevance in the *Joseph* decision was an

9    administrative one.  Any further reading of the BIA's decision would be based upon *dicta*.

10        Likewise, Respondents cannot rely upon the Eleventh Circuit's decision in *De la Teja*

11   *v. United States*, 321 F.3d 1357 (11th Cir. 2003).  Although the court found that the alien's

12   detention shifted from § 1226 to § 1231 upon issuance of the immigration judge's decision,

13   that was based upon the fact that no appeal (administrative or judicial) of that decision had

14   been made, and thus the alien was within the "removal period."  321 F.3d at 1363.

15        Finally, the recognition in 8 U.S.C. § 1252(b)(8) of the Attorney General's authority

16   to detain aliens under § 1231 "after a final order of removal" is not persuasive without a

17   presumption that only administrative finality is relevant, and cannot be read to eviscerate the

18   provision of § 1231(a)(2)(ii) delaying the removal period until after a judicial review coupled

19   with a stay.

20         Thus, the authorization for Petitioner's continued detention must come from §

21   1226(c).

22   **Detention Authorized by § 1226** - Section 1226 authorizes detention of aliens

23   "pending a decision on whether the alien is to be removed from the United States."  8 U.S.C.

24   § 1226(a). For "criminal aliens" who, like Petitioner have been found removable on the basis

25   of felony drug convictions, § 1226(c) governs their detention and makes it mandatory.

26        Petitioner's removal decision is still pending before the district court and ultimately

27   the Ninth Circuit in Petitioner's appeal of his citizenship determination.  "Detention during

28   removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*,

1  538 U.S. 510, 531 (2003).  Thus, Petitioner's detention is, without more, authorized under
2  § 1226(c).

3

4  **B.  EFFECT OF LENGTH OF DETENTION**

5       Here, Petitioner has been detained for almost four years as his removal proceedings
6  have plodded along.  Petitioner argues that this is too long.

7       **No Relief from _Zadvydas_** - In _Zadvydas_, the Court acknowledged that there are due
8  process limits beyond which detention fails to serve its purported purposes, and thus is not
9  constitutionally permissible. "A statute permitting indefinite detention of an alien would raise
10  a serious constitutional problem." _Zadvydas_, 533 U.S. at 690.  However, the Court in _Kim_
11  _v. Demore_, 538 U.S. 510 (2003) distinguished between the valid detention there where the
12  alien's removal proceedings were continuing, and that at issue in _Zadvydas_, where the
13  removal proceedings were complete.  The _Kim_ Court noted that in _Zadvydas_ "removal was
14  no longer practically attainable" and that "the period of detention at issue in Zadvydas was
15  'indefinite' and 'potentially permanent.' " _Id._ at 527-28.

16       Here, Petitioner's removal proceedings are continuing, not complete. While his
17  detention has been lengthy, its length is attributable to the administrative and judicial
18  processes, and it has a definite termination point. Upon completion of judicial review of his
19  petition, the stay of the removal order will be lifted.

20       Moreover, Petitioner has made no showing that his removal is not practically
21  attainable. Upon issuance of a ruling adverse to Petitioner, there is no reason to believe that
22  Petitioner's removal to Mexico could not be completed forthwith.

23       Petitioner invites this habeas court to find a probability that he will never be removed,
24  based upon the validity of his citizenship claim.[3]  (Reply, #17 at 10.)  That determination
25  is beyond the scope of this proceeding.  Nothing in _Zadvydas_ requires this habeas court to

26  _____

27       [3] Conversely, Respondents request a determination that Petitioner has not raised a
   "substantial argument" that he is not removable, and thus to find that Petitioner is not entitled
28  to application of _Tijani_. As discussed hereinafter, such a determination is not required.

1   subsume the removal process and to prognosticate on the ultimate outcome of his appeal of

2   his removal order.  In *Zadvydas*, the removal proceedings were complete (and thus the

3   detention authorized under § 1231 rather than § 1226), and the only delay in release through

4   removal was the practical impediments to executing the removal order.

5        It is true that in *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006), the court found

6   a probability that removal was not reasonably foreseeable, while removal proceedings were

7   still under way.  There, however, the situation was far more complex and far more resolute

8   than Petitioner's routine appeal of an adverse citizenship determination.  In *Nadarajah*, the

9   petitioner was a native of Sri Lanka who had been granted asylum and relief under the

10  Convention Against Torture by the immigration judge, and upon appeal of the asylum

11  decision and remand from the BIA, had again been granted asylum by the IJ.  That decision

12  had been upheld on review by the BIA.  However, the BIA had then undertaken the unusual

13  move of referring the matter back to the IJ to allow the government to update its

14  investigations, and then referred the matter to the Attorney General for a determination of

15  whether he desired to exercise discretion to review the matter *de novo*. 443 F.3d at 1075.  In

16  finding that removability was not foreseeable, the Ninth Circuit noted the rarity of a grant of

17  relief by the immigration judge of the type afforded Nadarajah, and found that although the

18  grant of asylum was discretionary, the withholding of removal was not.   The court

19  specifically noted that the despite being given "every opportunity to do so," the government

20  had not rebutted the petitioner's showing that he could not be removed to Sri Lanka, and that

21  there was no other country for removal.

22       Unlike *Nadarajah*, Petitioner has not already been granted administrative relief, nor

23  has the government placed Petitioner in administrative limbo akin to the BIA's referral of the

24  case to the Attorney General in *Nadarajah*.  Rather, Petitioner has repeatedly lost his claims

25  to citizenship, and the litigation of his removability has proceeded apace through normal

26  channels, and has not been shuttled into some administrative backwater.  Nor has Petitioner

27  has offered anything to show that upon an adverse resolution of his appeal he cannot be

28  removed.

1    **No Relief from _Kim_** - Petitioner argues that _Kim_ itself mandates his release, based

2    upon the sheer length of Petitioner's detention.  (Reply, #17 at 5-6.)  It is true that the _Kim_

3    Court noted that removal proceedings, and therefore detention under § 1226, normally lasts

4    only 90 days, a length of time which _Zadvydas_ would have found presumptively reasonable.

5    538 U.S. at 529.  In contrast, Petitioner has been detained for four years.  However, the Court

6    did not adopt any time limitations on detention.  Indeed, they noted that appeals would

7    lengthen the process, and dismissed any deterrent effect, noting:

8    > ""the legal system ... is replete with situations requiring the making of
     > difficult judgments as to which course to follow," and, even in the

9    > criminal context, there is no constitutional prohibition against requiring
     > parties to make such choices.

10   538 U.S. at 531, n. 14.

11   Petitioner argues that he should be released because the delay in proceedings is

12   attributable to entities other than himself.[4]  (Reply, #17 at 8.)  In his concurrence in _Kim_,

13   Justice Kennedy noted that "[w]ere there to be an unreasonable delay by the INS in pursuing

14   and completing deportation proceedings, it could become necessary then to inquire whether

15   the detention is not to facilitate deportation, or to protect against risk of flight or

16   dangerousness, but to incarcerate for other reasons."  _Kim_, 538 U.S. at 532-533 (Kennedy,

17   J. , concurring). Petitioner offers nothing to show that the Government has acted in anyway

18   to prolong these proceedings, but merely argues that he is not to blame either.  But, it is not

19   the sheer length of time in removal proceedings that Justice Kennedy thought would raise

20   constitutional concerns, but rather the inference that the delay and prolonged detention was

21   for illicit purposes.  There is no basis for such an inference here.  Rather, it appears that the

22   parties have both been litigating the matter in good faith, and that Petitioner's prolonged

23   detention can be attributed to inherent delays in the process itself.

24

25   _____

26   [4] Respondents argue, under the presumption that detention is under § 1231, that the
     delay amounts to Petitioner preventing his removal, and thus justifies extended detention

27   under § 1231(a)(1)(C).  (Answer, #11 at 11.)  Because the undersigned finds that the
     detention can only be authorized under § 1226, which has no comparable provision, this

28   argument is not addressed.

1    **Relief Available Under *Tijani*** - In *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir.

2    2005), the court expressed concern that expansive detention under § 1226(c) would be

3    unconstitutional, and held that mandatory detention under § 1226(c) is authorized only for

4    "expedited removal of criminal aliens" and that two years and eight months of process,

5    including his judicial appeals, was not expeditious.

6         Proceedings Not Expedited - Here, Petitioner has been in custody for almost four

7    years, far longer than the alien in *Tijani*. Of that time, only some 15 months was consumed

8    prior to Petitioner's September, 2005 appeal to the Ninth Circuit. The balance of 31 months

9    has been expended in judicial review.

10        Respondent argues that Petitioner's proceedings have not been unreasonably long.

11   (Answer, #11 at 19.)   To the extent that Respondent denies any bad faith on the

12   Government's part, the undersigned would agree. No party has been shown to have engaged

13   in foot dragging. However, *Tijani* did not rely upon the unreasonableness of the delay, and

14   did not provide an exception for reasonable delays. The proceeding is either expeditious, or

15   a bail determination is required.

16        Respondent argues that a different result is required by Judge Wake's decision in

17   *Mboussi-Ona v. Crawford*, 2007 WL 3026946 (D.Ariz.,2007) (CV-06-2897-PHX-NVW).

18   (*See* Answer, #11 at 20.)   In *Mboussi-Ona*, Judge Wake differentiated between

19   administrative and judicial delays, and found that to the extent that *Tijani* required expedited

20   judicial proceedings, it could not extend to "normal judicial appeal time." Judge Wake

21   rightly reasoned that any other reading would turn *Tijani* into a get-out-of-jail card (or at

22   least a get-a-bail-hearing card) obtainable by every removable alien by simply appealing a

23   removal decision.[5] 2007 WL 3029646, 5. However, in *Mboussi-Ona*, the petitioner's

24   judicial proceedings had only commenced in April, 2006, and thus had been pending for only

25

26         [5] The undersigned is not convinced that the time for administrative and judicial

27   proceedings must be analyzed separately. At some point, the sheer amount of time spent in
     removal proceedings, whether administrative or judicial, would seem to raise the due process

28   concerns which prompted the construction of § 1226 adopted by *Tijani*.

- 12 -

1    eight months at the time of his December, 2006 habeas petition, and only nineteen months

2    at the time of the Court's September, 2007 order.  *Id.* at 2.  Moreover, the administrative

3    proceedings in *Mboussi-Ona* had lasted only ten months, three of which were as a result of

4    the petitioner's own delays.  *Id.* at 1.  Thus, he had only been detained a total of 29 months.

5         Judge Wake did not propose what constituted normal judicial review time.  However,

6    the fact that this matter has been considered once by the Ninth Circuit, and then referred to

7    the District Court over nine months ago, suggests that the review of this case has not been

8    normal.

9         Moreover, the Federal Court Management Statistics reports reflect that the national

10   "Median Time from Filing Notice of Appeal to Disposition" for 2007 was only 12.2 months.

11   For the Ninth Circuit, it was higher, but still only 17.4 months.  *See http://www.uscourts.*

12   *gov/cgi-bin/cmsa2007.pl* (last accessed 5/2/7).  In contrast, Petitioner's judicial proceedings

13   have lasted 31 months, more than twice as long as the national average and 80% longer than

14   the Ninth Circuit's average.  Thus the time spent on judicial review in this case cannot be

15   said to  be within the normal judicial review time.

16        Thus, even under *Mboussi-Ona*, the implicit requirement in § 1226(c) for

17   expeditiousness  has not been met.

18        <u>Relief *Available*</u> - *However*, *Tijani* did not mandate that past some undefined point of

19   expeditiousness, an alien must be released.  Rather, at such point the alien is entitled to a

20   hearing to grant bail "unless the government establishes that he is a flight risk or will be a

21   danger to the community."  430 F.3d at 1242.[6]

22        Thus, in *Hang Nam Yoon v. Crawford*, 2008 WL 45405 (D.Ariz. Jan 02, 2008) (NO.

23   CV-06-3068-PHX-SMM), this Court relied on *Tijani*, not to release the alien, but to direct

24   that he be afforded a bail hearing.  *See also Martinez-Herrera v. Crawford,*  2007 WL

25

26        [6]  In commenting on the constitutional questions, the *Tijani* decision noted that it
     involved "lawfully admitted resident aliens who are subject to removal."  430 F.3d at 1242.

27   There is no suggestion that Petitioner is a lawfully admitted resident alien.  However, *Tijani*
     was resolved on statutory construction grounds, and thus the "expedited process" limitation

28   would apply irrespective of the pre-removal proceeding status of the alien.

1   2023469 (D.Ariz.,2007) (NO.CV-07-0267-PHX-NVW) (release conditioned on a grant of

2   bail hearing); *Ali v. Crawford,* 2007 WL 1670165 (D.Ariz.,2007) (CV-06-1149-PHX-EHC)

3   (same); *Zhang v. Gonzales,* 2007 WL 2925192  (D.Ariz.,2007) (CV-06-0892-PHX-ROS)

4   (same);  *Makaj  v. Crowther*, 2007 WL 3224539 (D.Ariz. 2007) (CV-07-0342-PHX-JAT)

5   (addressing whether a bail hearing was required due to delay).

6           Here, Petitioner has repeatedly received administrative hearings on his continued

7   detention.  However, they have been reviews by ICE officials, not by an immigration judge.

8   Moreover, a review of the detention decisions reflects that they have been made under the

9   purported authority of 8 C.F.R. § 241.4.  (*See* Exhibit V, Detention Decision 9/26/07, at 1

10  (citing 8 C.F.R. § 241.4(d)(1).)  That regulation is a delegation of the Attorney General's

11  authority to determine custody "under sections 241(a)(6) and 212(d)(5)(A) when there is a

12  final order of removal."  As discussed above, there is no such order here, and Petitioner's

13  custody is pursuant to the pre-removal order provisions of § 1226.  "Prior to such final order

14  . . .the immigration judge is authorized to exercise the authority in section 236 of the Act [8

15  U.S.C. § 1226]."  8 C.F.R. § 1236.1(d)(1).

16          Thus, in *Tijani, Yoon, Martinez-Herrera*, *Ali* and *Zhang*, the courts directed that the

17  petitioner be given a custody hearing before an immigration judge.  Because his removal

18  proceedings have not been expeditious, Petitioner is entitled to the same.

19          <u>Lack of "Substantial Argument" Against Removability</u> - Respondent argues that

20  Petitioner is not entitled to application of *Tijani* because he has failed to raise a "substantial

21  argument" that he is not removable.  (Answer, #11 at 21.)  However, the court's opinion in

22  *Tijani* imposed no such requirement.  Rather, as recognized by Respondent, the discussion

23  on a "substantial argument" arose in Judge Tashima's concurrence.  However, that was in

24  the context of Judge Tashima's proposal for a sweeping modification to the jurisprudence

25  of mandatory detention, *i.e.* that "[o]nly those immigrants who could not raise a 'substantial'

26  argument against their removability should be subject to mandatory detention."  430 F.3d at

27  1247.  Respondent does not appear to adopt Judge Tashima's proposal, and cannot morph

28  its shield into a sword preventing application of the *Tijani* court's decision.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed  August 10, 2007 (#1) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Court issue its Order that Respondent shall either release Petitioner from custody under an order of supervision, or provide a hearing to Petitioner, within 30 days of the filing of this Order, before an Immigration Judge with the power to grant him bail unless the Government establishes therein that he is a flight risk or will be a danger to the community.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: May 13, 2008

_____
JAY R. IRWIN
United States Magistrate Judge

- 15 -